UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

HELIX ELECTRIC, INC.,

            NO. CIV. 05-2303 FCD KJM

        Plaintiff,

    v.                        MEMORANDUM AND ORDER

DIVISION OF LABOR STANDARDS
ENFORCEMENT, an agency of the
State of California;
DEPARTMENT OF INDUSTRIAL
RELATIONS, an agency of the
State of California; DONNA
DELL, an individual in her
capacity as Labor Commissioner
of the State of California;
JOHN REA, an individual in his
capacity as Acting Director of
the Department of Industrial
Relations of the State of
California; COUNTY OF
SACRAMENTO, PUBLIC WORKS
COMPLIANCE PROGRAM,

        Defendants.

----oo0oo----

    This matter is before the court on plaintiff Helix Electric,

Inc.'s ("Helix") motion for a preliminary injunction enjoining

defendants from releasing the home addresses of Helix's employees

to defendant Public Works Compliance Program ("PWCP") pursuant to

1

1  Labor Code Section 1776(e).  The court heard oral argument on the

2  motion on January 27, 2006.  For the reasons set forth below,

3  plaintiff's motion is DENIED.

4                              **BACKGROUND**

5       Helix is a non-union electrical contractor that performs

6  both public and private work projects throughout the state of

7  California.  (Decl. of Arthur Geller in Supp. of Pl.'s Mot. for a

8  T.R.O. & Prelim. Inj. ("Geller Decl."), executed Nov. 22, 2005, ¶

9  2).  Helix is currently performing work as a subcontractor on a

10  public works project within the County of Sacramento known as the

11  Juvenile Hall Expansion and Modifications Project.  (Id. ¶ 3).

12       PWCP represents itself as a joint labor-management committee

13  ("LMC") established pursuant to 29 U.S.C. § 175a.  (Decl. Of

14  Kevin Abram in Opp'n to Pl.'s Mot. for Prelim. Inj. ("Abram

15  Decl."), executed Jan. 5, 2006, ¶ 1).  PWCP is funded by the

16  Sacramento Electrical Construction Industry Labor-Management

17  Cooperation Committee (the "LMCC"), which was established by the

18  National Electrical Contractors Association ("NECA") and the

19  International Brotherhood of Workers ("IBEW").  (Id. ¶ 7).

20  However, neither NECA nor IBEW instructs PWCP as to its job

21  duties or directs the work that PWCP performs.  (Id.)  PWCP

22  reports on a monthly basis to the LMCC.  (Deposition of A.C.

23  Steelman attached as Exh. 2 to Declaration of Roberta D. Perkins

24  in Supp. of PWCP's Rebuttal to Pl.'s Reply[1] ("Steelman Dep."),

25  _____

26          [1]   The court will consider PWCP's rebuttal and exhibits
   attached thereto because new factual issues were raised in
27  Helix's reply as a result of a discovery order issued by the
   Magistrate Judge on Jan. 11, 2006.  PWCP did not have an
28  opportunity to respond to new factual allegations made by
   plaintiff in its opposition papers.

                                   2

filed Jan. 24, 2006, 14:5-7).  PWCP was formed for the purpose of monitoring public works construction projects within its jurisdiction, and implements this purpose, in part, by educating labor and management as to their rights and responsibilities with respect to public works projects.  (Id. ¶ 3).

In or around September 2005, PWCP sent a request to the County of Sacramento pursuant to Labor Code § 1776(e), requesting copies of Helix's certified payroll records which include the addresses of Helix's employees. (Geller Decl. ¶ 4).  In or around October 2005, Helix sent a letter to the Deputy County Counsel for the County of Sacramento, contesting the validity of PWCP's status as a joint LMC and requesting that the County refuse to turn over employee addresses to PWCP.  (Decl. of Richard M. Freeman in Supp. of Pl.'s Mot. for a T.R.O. & Prelim. Inj. ("Freeman Decl."), executed Nov. 21, 2005, ¶ 2).  In response, the Deputy County Counsel informed Helix that the County intended to comply with PWCP's request and that prevention of the release of employee addresses would require a court order. (Id. ¶ 3).

On November 22, 2006, Helix filed a motion for a temporary restraining order and order to show cause regarding entry of a preliminary injunction.  The County did not oppose the motion for entry of the temporary restraining order, and the court granted plaintiff a temporary restraining order.  Defendants Division of Labor Standards Enforcement ("DLSA") and PWCP have filed oppositions in response to plaintiff's motion for a preliminary injunction.

/////

3

1   Helix contends (1) that PWCP is not a joint LMC; (2) that
2  compliance monitoring is not within the scope of permissible
3  activities of an LMC; (3) that Labor Code § 1776(e) is preempted
4  by the National Labor Relations Act ("NLRA"); and (4) that Labor
5  Code § 1776(e) violates the Equal Protection Clause.  Helix
6  further contends that it and its employees will suffer
7  irreparable injury if the certified payroll records, including
8  employee addresses, are released to PWCP.

9                              **STANDARD**

10   To obtain a preliminary injunction, a party must show
11  either: "(1) a combination of probable success on the merits and
12  the possibility of irreparable injury, or (2) that serious
13  questions are raised and the balance of hardships tips sharply in
14  [its favor]."  <u>Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,</u>
15  <u>Inc.</u>, 240 F.3d 832, 839-40 (9th Cir. 2001).  "These two
16  formulations represent two points on a sliding scale in which the
17  required degree of irreparable harm increases as the probability
18  of success decreases."  <u>Roe v. Anderson</u>, 134 F.3d 1400, 1402 (9th
19  Cir. 1998).  Under either formulation of the test, a plaintiff
20  must still demonstrate a significant threat of irreparable
21  injury.  <u>Oakland Tribune, Inc. v. Chronicle Publishing Co.</u>, 762
22  F.2d 1374, 1376 (9th Cir. 1985).

23                              **ANALYSIS**
24  **A.   <u>Irreparable Harm</u>**

25   Plaintiff contends that Helix and its employees will suffer
26  irreparable injury if a preliminary injunction is not issued
27  "since the PWCP will have then received the home addresses of
28  Helix's employees."  (Pl.'s Mot. for a T.R.O. & Prelim. Inj.

                                  4

1  ("Pl.'s Mot."), filed Nov. 22, 2005, at 19).  Plaintiff argues

2  that PWCP and "its union backed entities" will be free to

3  disseminate and utilize this information without any monitoring

4  by plaintiff.  (Id.)  Specifically, Helix asserts that defendant

5  PWCP will improperly use the employee addresses it obtains to

6  organize a union, harass and solicit non-union employees, post

7  the addresses of the non-union employees in newspapers or trade

8  publications, or sell them to other solicitors.  (Pl.'s Reply in

9  Supp. of a T.R.O. & Prelim. Inj. ("Pl.'s Reply"), filed Jan 20,

10  2006, at 12).  These arguments fail to demonstrate a significant

11  threat of irreparable injury.

12      The disclosure of employee addresses does not, by itself,

13  amount to irreparable injury to plaintiff or plaintiff's

14  employees.  The injury that plaintiff is concerned with is the

15  harassment or intimidation of its employees by a union seeking to

16  organize these employees.  IBEW, the union whose potential

17  actions plaintiff is concerned with, is not a party to this

18  action.  The injury plaintiff asserts in its motion could only

19  occur if and after PWCP disclosed those names and addresses to

20  the union.  Plaintiff has not demonstrated that PWCP's purpose in

21  seeking this information is to gain information for the union to

22  aid in organization efforts.  Nor has plaintiff presented any

23  evidence substantiating its allegations that PWCP "serves at the

24  bidding of the IBEW and its Local 340 located in Sacramento."

25  (Pl.'s Mot. at 9).  At this juncture, the potential for injury to

26  the plaintiff or its employees is wholly speculative.

27  "Speculative injury does not constitute irreparable injury."

28  Colorado Rive Indian Tribes v. Town of Parker, 776 F.2d 846, 849

5

(9th Cir. 1985).  Therefore, plaintiff has not satisfied its burden for the issuance of a preliminary injunction.[2]

        For these reasons, plaintiff has not demonstrated a likelihood of irreparable harm if the court does not enjoin the release of its employees home address.  As such, plaintiff's motion for a preliminary injunction is DENIED.

**B.   Merits of Plaintiff's Claims**

        Although the court has found that plaintiff has not satisfied the requisite showing of a likelihood of irreparable harm in order to obtain a preliminary injunction, for the purpose of completeness, the court will address issues related to the probability of plaintiff's success on the merits.

        **1.   PWCP's Status as a Joint Labor Management Committee**

        Helix contends that PWCP is not entitled to the certified payroll records because it is not a valid joint LMC formed pursuant to § 175a of the National Labor Relations Act. Specifically, Helix argues that PWCP is not registered with any federal or state agency and is not registered with the California Secretary of State.  Helix also presents evidence that in PWCP's formal application to the State of California to act as a labor compliance program, the supporting documentation indicates that it consisted of one investigator; Helix asserts that a joint LMC cannot consist of one person.

_____

        [2]   Moreover, even if plaintiff provided supported this argument with evidence, the potential injury may be redressed. Section 158 of the National Labor Relations Act makes it unlawful for a labor organization or its agents "to restrain or coerce employees in the exercise" of the right to organize as well as the right to refrain from organizing.  29 U.S.C. §§ 157-58 (West 2005).

Section 175a of the NLRA sets forth the applicable standards regarding the formation of industrywide LMCs.  Section 175a provides that LMCs are "organized jointly by employers and labor organizations representing employees in that plant area or industry" and are "established for the purpose of improving labor management relationships, job security, organizational effectiveness, enhancing economic development or involving workers in decisions affecting their jobs . . . ."  29 U.S.C. § 175a.  The statute imposes no further requirements for the formation of a joint LMC.  Nor does federal case law impose additional requirements.  Therefore, the only clear requirements to form a valid LMC pursuant to § 175a are (1) joint organization by labor and management groups; and (2) formation for one of the enumerated purposes.  As such, there is no requirement that a joint LMC register with a particular state or federal agency or entity.  Nor is there a requirement regarding the number of members in a valid joint LMC.

PWCP is funded by the Sacramento Electrical Construction Industry Labor-Management Cooperation Committee (the "LMCC"), which is comprised of NECA, a management organization, and IBEW, a labor union.  (Sacramento Electrical Construction Industry Labor-Management Cooperation Trust Agreement, attached at Exh. 1 to PWCP's Rebuttal to Pl.'s Reply ("Trust Agreement"), filed Jan. 24, 2006, at 1).  On June 1, 1990, NECA and IBEW entered into a cooperation trust agreement in order to form the LMCC pursuant to 29 U.S.C. § 175a.  (Id. at 1, 26).  In March 2002, the Board of Directors of the LMCC passed a resolution authorizing the opening of an additional bank account in the name of the PWCP.  (Abram

7

Decl. ¶ 7).  The PWCP is a subdivision of the LMCC, which is
governed by a committee of trustees.  (Steelman Dep. 10:18-11:1).
The trustees hold regular monthly meetings, at which the PWCP
routinely reports.  (Steelman Dep. 14:5-7).  The LMCC board of
trustees is made up of equal representation of management and
labor.  (Sacramento Electrical Construction Industry Labor-
Management Cooperation Trust Agreement, attached at Exh. 1 to
PWCP's Rebuttal to Pl.'s Reply ("Trust Agreement"), filed Jan.
24, 2006, 14-15).[3]  Therefore, the Sacramento Electrical
Construction Industry Labor-Management Committee, and PWCP as a
subdivision of the LMC, meets the requirement of having been
organized jointly be a management organization, NECA, and a labor
organization, IBEW.

     The Trust Agreement provides that the Sacramento Electrical
Construction Industry Labor-Management Cooperation Committee is
established pursuant to § 175a.  (Trust Agreement at 1).  The
excerpts of the Trust Agreement submitted by the parties do not
specifically state that the LMCC was established for one of the
listed purposes set forth in § 175a; nor do the excerpts provide
explanation of any specific purpose contemplated in formation of
the LMCC.  However, Helix has not presented any evidence that the
LMCC was not formed for one of the purposes set forth in § 175a.
As such, the court cannot find that plaintiff would likely

---

        [3]    The balance of the board of trustees has traditionally
been three management and three labor.  (Steelman Dep. 34:3-9).
However, for the past year, management has had only one trustee
because management has not yet appointed replacement trustees.
(Steelman Dep. 34:1-2).  This does not affect the voting process
of the LMC because the Trust Agreement provides for unit voting,
which allows the management trustee to continue to act as if
three members were present.  (Trust Agreement at 16).

prevail on its argument that the LMCC, and PWCP as a subdivision
of the LMCC, is not a proper joint labor-management committee
formed pursuant to § 175a.

    For the reasons set forth above,[4] plaintiff has not
demonstrated probable success on the merits based upon its
argument that PWCP is not a valid LMC.

### 2.   Permissible Activities of Joint Labor Management Committees

    Helix contends that the function of PWCP exceeds the
permissible purposes of an LMC as provided in § 175a.
Specifically, Helix argues that "PWCP's purpose is to monitor and
harass non-union contractors such as Helix in the hopes of
organizing Helix or disrupting its operations thereby decreasing
competition." (Pl.'s Mot. at 8). Helix asserts that compliance
monitoring is not a permissible activity of a joint LMC.

    PWCP was formed for the purpose of monitoring public works
construction projects within its jurisdiction. (Abrams Decl. ¶
3). Part of the duties of the PWCP is to educate labor and
management as to their rights and responsibilities with respect
to public work projects. (Id.) While these specific purposes
and functions are not enumerated in § 175a, the monitoring and
enforcement of prevailing wage laws and other industry

_____

    [4]   Additionally, the California Department of Industrial
Relations has recognized PWCP's status as a joint LMC formed
pursuant to § 175a. (Exh. 1 to Decl. of Roberta D. Perkins in
Opp'n to Pl.'s Mot. for Prelim. Inj. ("Perkins Decl."), executed
Jan. 6, 2006). The Department of Industrial Relations found that
it was proper for PWCP to intervene in a review of a civil wage
and penalty assessment with respect to work performed by Helix
Electric, Inc. on the California State University
Telecommunications Infrastructure Upgrade Project. Id.

requirements serves the broader purposes of the federal statute.
In passing § 175a, Congress issued a Statement of Purpose.  One
of the Congress' purposes in passing § 175a was "to study and
explore ways of eliminating potential problems which reduce the
competitiveness and inhibit the economic development of the . . .
industry."  Section 6(b) of Pub. L. 95-524.  Congress also sought
"to enhance the involvement of workers in making decisions that
affect their working lives;" and "to expand and improve working
relationships between workers and managers."  Id.

    Monitoring and enforcing prevailing wage laws help serve the
broad purposes of a § 175a joint LMC.  The purpose of the
prevailing wage law is to benefit and protect workers on public
works projects.  Lusardi Construction Co. v. Aubry, 1 Cal. 4th
976, 987 (1992).  By monitoring prevailing wage laws and
informing workers on public works projects that their employer
may not be complying with these laws, an LMC is "enhancing the
involvement of workers in making decisions that affect their
working lives" by giving workers more information about their
rights and the realities of their current employment.  Further,
the general objective of prevailing wage laws also

> subsumes within it a number of specific goals: to
> protect employees from substandard wages that might be
> paid if contractors could recruit labor from distant
> cheap-labor areas; to permit union contractors to
> compete with nonunion contractors; to benefit the
> public thought the superior efficiency of well-paid
> employees; and to compensate nonpublic employees with
> higher wages for the absence of job security and
> employment benefits enjoyed by public employees.

Id.  Monitoring and enforcement of the prevailing wage laws
promotes competition within the industry because one of the goals
of prevailing wage laws is to permit union and non-union

contractors to compete for public works projects.  Compliance with prevailing wage laws therefore promotes more competition within the industry.  Finally, ensuring compliance with prevailing wage laws also improves working relationships between workers and managers because prevailing wage laws prevent employers from paying substandard wages to workers; monitoring and enforcing an employers' compliance ensures that workers are paid a proper wage.

Compliance monitoring efforts are not specifically enumerated in § 175a.  However, allowing joint LMCs to function with the purpose of monitoring and enforcing compliance with state prevailing wage laws does not expand the scope of permissible activities.  Rather, enforcement of prevailing wage laws is merely a specific implementation of the broader purposes for which § 175a was enacted.  As such, plaintiff has not demonstrated probable success on the merits based on its contention that PWCP functioned outside the permissible scope of purposes and activities of an LMC.

### 3.   Preemption by the National Labor Relation Act

Helix contends that California Labor Code § 1776(e) pits union employers against non-union employers, impermissibly interferes with the jurisdiction of the NLRB, and alters the balance of power between labor and management.  Based upon these assertions, Helix argues that California Labor Code § 1776(e) is preempted by the NLRA under the doctrines of Garmon and Machinist preemption.

Federal preemption under either the Garmon or Machinists doctrine applies only to legislation that affects protected union

activities or affects the relationship between unions and
employers.  PWCP is not a union.  Plaintiff has not presented
evidence to demonstrate that PWCP is controlled by a union.
Section 1776(e) provides federally recognized LMCs access to
certified payroll records of contractors on public works
projects.  Cal. Lab. Code § 1776(e).  This section also
authorizes LMCs to file civil actions to collect unpaid
prevailing wages and benefits dues.  Id.  Section 1776(e) does
not implicate activities prohibited or protected by §§ 7-8 of the
NLRA or alter the balance of power between management and labor.
Rather, § 1776(e) empowers non-governmental parties to aid in the
enforcement of California's wage and hour laws.  Id.  This type
of conduct is not covered by the NLRA and thus, is not preempted.

### a. **Garmon Preemption**

When state law conflicts with federal labor law under the
NLRA, it is preempted by the federal scheme.  In Garmon, the
Supreme Court reversed a California state court's award of
damages to a business being picketed by labor unions.  San Diego
Building Trades Council et al. v. Garmon, 359 U.S. 236, 246
(1959).  The Garmon Court considered the narrow question of
whether the "California court had jurisdiction to award damages
arising out of peaceful union activity."  Id. at 239.  The Court
held that the state court exceeded its proper jurisdiction and
that the state court action was preempted by §§ 7-8 of the NLRA.
Id. at 246.

The Court's analysis turned on the possibility and
prevention of conflict between federal and state laws.  Id. at
242-44.  The Court examined the creation of the NLRB as an

12

administrative agency charged with enforcement of the comprehensive federal statutory scheme. Id. Because the NLRB is a regulatory body, "judicial concern has focused on the nature of the activities which the States have sought to regulate." Id. at 243. In contrast, when the activity is either protected under § 7 of the NLRA or prohibited by § 8, state jurisdiction will be preempted. Id. Further, activities that fall within the penumbra of §§ 7-8 are also preempted. Id. at 245-46.

State law is not preempted by the NLRA, however, when the activity regulated by a state is a "peripheral concern of the Labor Management Relations Act" or when the regulated conduct touches interests "deeply rooted in local feeling and responsibility." Id. at 244. When the conduct at issue is violent or an imminent threat to public order, such conduct falls within a state's regulatory jurisdiction because of the compelling state interest in preservation of the peace. Id. at 247. The Garmon doctrine was designed to ensure the conformity of national labor policy and avoid conflict with varying state laws. Sears, Roebuck, and Co. v. San Diego Cty. Dist. Council of Carpenters, 436 U.S. 180, (1978). Although state regulation concerning labor-management relations is generally preempted under Garmon, the doctrine does not "support an approach which sweeps away state-court jurisdiction over conduct traditionally subject to state regulation." Id. at 219.

In the instant case, § 1776(e) is concerned with the enforcement of state wage and hour laws. The enforcement of California's prevailing wage laws is not actually or arguably protected by §§ 7-8. It is well settled that wages and

prevailing wage laws are a subject of traditional state concern.
WSB Elec., Inc. v. Curry, 88 F.3d 788, 791 (9th Cir. 1996)
(holding that regulation of wages per se is not within ERISA's
coverage and is not subject to its broad preemption clause).
Therefore, Garmon preemption does not apply to § 1776(e).

### b. **Machinists** Preemption

When state action shifts the balance of power between labor
and management or frustrates the federal purpose behind the NLRA,
that action is preempted.  Machinists v. Wisconsin Employment
Relations Comm'n, 427 U.S. 132, 154 (1976).  In Machinists, the
employer and the employees negotiated a collective-bargaining
agreement outlining the terms and conditions of employment.  Id.
at 133-34.  After ratification of the agreement the employer
began unilaterally altering the terms and conditions of
employment.  Id. at 134.  Soon after, the union adopted a
resolution preventing union members from volunteering for or
accepting overtime.  Id.  The employer filed an action with the
NLRB charging the union with a violation of § 8(a) of the NLRA
but the charge was dismissed as the conduct did not violate the
Act.  Id. at 135.  The employer also filed an action with the
state labor relations board which found that refusing to work
overtime was not "arguably protected under § 7 or arguably
prohibited under § 8."  Id.  The state board believed it was not
preempted from exercising its authority and ordered the union and
its members to stop their refusals to work overtime.  Id. at 136.

The Machinists Court recognized a range of protected
activities not explicitly regulated by the NLRA.  Id. at 141.
Such activities are circumscribed by the legislative purpose

underlying the Act.  Id. at 149-50.  The Court surveyed the

extent to "which federal labor policy and the federal [Labor

Relations] Act have pre-empted state regulatory authority to

police the use by employees and employers of peaceful methods of

putting economic pressure upon one another."  Id.  The Court held

that neither the NLRB nor states may regulate the use of economic

weapons or the types of economic pressure that may be brought to

bear and used by either party in collective bargaining

negotiations.  Id. at 146-47.  Thus, the state labor board's

action was preempted.

    In this case, § 1776(e) is concerned with the enforcement of

prevailing wage laws and does not impermissibly regulate the

economic weapons available to either employers or unions.

Section 1776(e) simply provides another enforcement mechanism to

ensure that workers on public work projects are paid the

prevailing wage.  Therefore, Machinists preemption does not apply

to § 1776(e).

### c.  Chamber of Commerce v. Lockyer

    Helix relies heavily on the Ninth Circuit's ruling in

Chamber of Commerce v. Lockyer, 422 F.3d 973 (9th Cir. 2005), to

argue that § 1776(e) is preempted by the NLRA.  At issue in

Lockyer was a statute passed by the California Legislature

forbidding "the recipient of a grant of state funds" from using

those funds to attempt to influence its employees to support or

oppose a union.  Id. at 977.  The Lockyer court stated that the

statute was "regulatory in nature" and not "focused on the police

power, state procurement concerns, or local economic needs."

Lockyer, supra, 422 F.3d at 977.

15

1   The court found that the law impermissibly "chill[ed]

2   employer speech on the merits of unionism" and effectively ended

3   employer attempts to defeat union organizing.  Id. at 978.

4   Section 8(c) of the NLRA "explicitly protects the right of

5   employers to express their views about unions and union

6   organizing."  Id. at 982.  Thus, the statute plainly and

7   impermissibly conflicted with the federal scheme of regulation,

8   particularly § 8(c) of the NLRA, and was thus preempted under

9   Garmon.  Id.

10      The court also found that the statute took an economic

11  weapon away from management and shifted the balance of power

12  toward unions.  Id. at 988.  The court noted that behind a facade

13  of labor-management neutrality, the California law actually

14  forced employers to take a position of neutrality rather than a

15  position of opposition to labor.  Id. at 978.  Therefore, since

16  the statute altered the balance of power between labor and

17  management it was also preempted by Machinists.  Id.

18      Lockyer is distinguishable from the statute and facts

19  involved in this case.  Labor Code § 1776(e) does not prevent

20  employers or unions from exercising rights granted by the LMRA.

21  Rather, § 1776(e) allows wage compliance monitoring by an

22  independent organization, industrywide joint LMCs.  Id.  Unlike

23  the statute in Lockyer, the statute at issue in this case

24  concerns enforcement of California's wage and hour laws, a

25  traditional exercise of state police power.  The statute in this

26  case does not affect either employers or unions, but grants joint

27  LMCs the right to access employee addresses from files of the

28  awarding state entity, the DLSE or the Division of Apprenticeship

16

Standards.  Cal. Lab. Code § 1776(e).  Therefore, Helix's
reliance on <u>Lockyer</u> is misplaced.[5]

       For the reasons set forth above, plaintiff has not
demonstrated probable success on the merits based upon its
argument that § 1776(e) is preempted by the National Labor
Relations Act.

       **4.   Equal Protection Clause**

       Finally, Helix contends that § 1776(e) violates the Equal
Protection Clause of the Fourteenth Amendment because no rational
relationship exists between the special advantage given to LMCs
and any legitimate state interest.  Because this case involves
"social and economic policy," and neither targets a suspect class
nor impinges upon a fundamental right, the statute is valid so
long as there is "any reasonably conceivable state of facts that
could provide a rational basis for the classification."  <u>FCC v.
Beach Communication, Inc.</u>, 508 U.S. 307, 313 (1993).  "Using such
rational-basis review, a statute is presumed constitutional, and
'the burden is on the one attacking the legislative arrangement
to negative every conceivable basis which might support it.'"
<u>Manauskas v. Gonzales</u>, 432 F.3d 1067, 1071 (9th Cir. 2005)
(quoting <u>Heller v. Doe</u>, 509 U.S. 312, 320 (1993)).  "Where there

---

       [5]   Helix similarly relies on NLRB precedent, <u>Tech. Service
Solutions</u>, 332 NLRB No. 100, slip op. (2000), to support its
contention that § 1776(e) impermissibly infringes on the
jurisdiction of the NLRB and is therefore preempted by <u>Garmon</u>.
(Pl's Mot. at 14).  The <u>Technology Services</u> NLRB panel found that
an employer has no obligation to provide the addresses of its
employees to a union.  (Id. at 3).  In this case, however, Helix
is under no obligation to provide a union with the addresses of
its employees.  At issue in this case is Helix's opposition to
the release of certain employees addresses by a government agency
to a joint labor-management committee, an issue not raised in
<u>Technology Services</u>.

are 'plausible reasons' for [legislative] action, 'our inquiry is at an end.'" Rui One Corp. v. City of Berkeley, 371 F.3d 1137, 1154 (9th Cir. 2004) (citing Beach Communication, Inc., 508 U.S. at 313-14.)

Section 1776(e) provides LMCs access to certified payroll records of contractors on public works projects, including employee addresses. Cal. Lab. Code § 1776(e). Section 1776(e) was passed because "union representatives and joint labor-management committees [were] unable to determine when contractors [were] misclassifying and underpaying skilled workers in violation of prevailing wage laws." Assembly Committee on Appropriations Report on SB 588, Ex. 4 to Decl. of Matthew S. McConnell in Supp. of Pl.'s Mot. for a T.R.O. & Prelim. Inj. ("McConnell Decl."), executed Nov. 22, 2005). Further, because the "DLSE [had] only 20 field investigators and six auditors in the public works unit," the state agency could not adequately enforce the prevailing wage laws. Id.

The State of California has a legitimate interest in regulating wages and employment conditions. Rui One Corp. v. City of Berkeley, 371 F.3d at 1150 (9th Cir. 2004). Enforcement of these regulations is also a legitimate state interest. See City of Long Beach v. Dep't. of Insus. Relations, 34 Cal. 4th 942, 949 (2004).

> The Legislature has declared that it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required or permitted to work under substandard unlawful conditions and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

18

1   Id. (internal quotations and citations omitted).  "The overall
2   purpose of the prevailing wage law is to protect and benefit
3   employees *on public works projects*."  Id.

4        Because state agencies could not adequately enforce
5   prevailing wage laws alone, (Assembly Committee on Appropriations
6   Report on SB 588, Ex. 4 to McConnell Decl.), the Legislature
7   granted LMCs access to employee addresses for individuals working
8   on public works projects.  Cal. Lab. Code. § 1776(e).  The
9   release of employee addresses could reasonably help LMCs in their
10  enforcement effort because it would allow LMCs to contact workers
11  upon finding violations in the records and potentially maintain a
12  civil action on their behalf.  It is certainly "plausible" that
13  the Legislature specifically released the information to LMCs
14  because, by definition, LMCs represent both labor and management,
15  and therefore, release of the information will not unfairly
16  benefit one over the other.  It is also "plausible" that the
17  Legislature found that the ability of LMCs to contact employees
18  could aid them in the enforcement of the California's wage and
19  hour laws on public works projects, a subject of traditional and,
20  at the very least, legitimate state concern.  Therefore, §
21  1776(e) does not violate the Equal Protection Clause.

22                          **CONCLUSION**

23        Therefore, for the foregoing reasons, the plaintiff's motion
24  for a preliminary injunction is DENIED.

25
         IT IS SO ORDERED.
26  DATED: February 24, 2006

27                          /s/ Frank C. Damrell Jr.
                            FRANK C. DAMRELL, Jr.
28                          UNITED STATES DISTRICT JUDGE

                               19